UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MILOEDU, INC.,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>LYBROAN DENNIS JAMES, et al.,<br><br>　　　　　Defendants. | Case No. 21-cv-09261-JST<br><br>**ORDER GRANTING MOTION FOR TEMPORARY RESTRAINING ORDER AND EXPEDITED DISCOVERY**<br><br>Re: ECF No. 23 |

Before the Court is a motion for a temporary restraining order and expedited discovery filed by Plaintiff Miloedu, Inc. ("MILO"). ECF No. 23. The Court will grant the motion.

## I.　BACKGROUND

MILO was co-founded by Gary Mack and Defendant Lybroan Dennis James. MILO alleges that, unbeknownst to Mack, James started a competing company, Defendant Stemulate Solutions, Inc., and began to divert business opportunities from MILO to Stemulate Solutions beginning in September 2021. James resigned from MILO on November 3, 2021, and MILO has presented evidence that James – in violation of an agreement he signed regarding proprietary information – made electronic copies of MILO's intellectual property, including all of its video content and contact information and notes regarding MILO's current and potential clients and investors. Stemulate Solutions now lists on its website a number of clients who either used to be MILO clients or with whom MILO was pursuing contracts.

The agreement signed by James during his employment with MILO ("the Company") defines "Proprietary Information" as:

> any and all information and materials, in whatever form, tangible or intangible, whether disclosed to or learned or developed by me before or after the execution of this Agreement, whether or not

> marked or identified as confidential or proprietary, pertaining in any manner to the business of or used by the Company and its affiliates, or pertaining in any manner to any person or entity to whom the Company owes a duty of confidentiality.

ECF No. 15 at 20. James agreed to the following restrictions:

> I agree that, during my employment and at all times thereafter, I will hold the Proprietary Information in strict confidence and I will not use, reproduce, disclose or deliver, directly or indirectly, any Proprietary Information except to the extent necessary to perform my duties as an employee of the Company or as permitted by a duly authorized representative of the Company. I will use my best efforts to prevent the unauthorized use, reproduction, disclosure or delivery of Proprietary Information by others. . . .
>
> I shall not, following the termination of my employment with the Company for any reason, use the Company's Proprietary Information or trade secrets or any other means that would amount to unfair competition to solicit any of the Company's customers, clients, vendors, business partners, or suppliers, or otherwise interfere with any business relationship or contract between the Company and any of its customers, clients, vendors, business partners, or suppliers. . . .
>
> I agree to promptly return all property of the Company, including, without limitation, (a) all source code, books, manuals, records, models, drawings, reports, notes, contracts, lists, blueprints, and other documents or materials and all copies thereof, (b) all equipment furnished to or prepared by me in the course of or incident to my employment, and (c) all written or tangible materials containing Proprietary Information in my possession upon termination of my employment for any reason or at any other time at the Company's request. Following my termination, I will not retain any written or other tangible material containing any Proprietary Information or information pertaining to any Company Invention.

*Id.* at 21, 22, 26-27. James also agreed that he had "no information or materials pertaining in any manner to the business of or used by the Company and its affiliates, other than information I have learned from the Company in the course of being hired and employed." *Id.* at 21, 31.

MILO originally filed suit in the Central District of California on November 23, 2021. ECF No. 14 at 10 n.1. That court denied preliminary injunctive relief, which MILO sought on an ex parte basis, and indicated that not all claims appeared to be proper in that district based on the proprietary information agreement's forum selection clause. *Id.* MILO then voluntarily dismissed that case on November 29, 2021, *id.*, and filed this case the following day, ECF No. 1. It filed a motion for preliminary injunction and expedited discovery on December 3, 2021, ECF No. 14, and subsequently sought a temporary restraining order, as well as expedited discovery, on

December 14, 2021, ECF No. 23. The Court granted MILO's request to set a December 20, 2021 deadline for Defendants to oppose the motion for a temporary restraining order and to decide the motion without a reply or oral argument. ECF No. 26. On December 20, Defendants filed an opposition to MILO's temporary restraining order motion.[1] ECF No. 29. The deadline for Defendants to file an opposition to MILO's preliminary injunction motion has passed, and Defendants have not filed any opposition to that motion.[2]

## II.   JURISDICTION

The Court has jurisdiction under 28 U.S.C. § 1331

## III.   LEGAL STANDARD

The same legal standard applies to a motion for a temporary restraining order and a motion for a preliminary injunction. *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 22 (2008). A plaintiff "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Id.* at 20. The court may "balance the elements" of this test, "so long as a certain threshold showing is made on each factor." *Leiva-Perez v. Holder*, 640 F.3d 962, 966 (9th Cir. 2011) (per curiam). Thus, for example, "serious questions going to the merits and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011) (quotation marks omitted).

---

[1] The opposition was filed ten minutes after the 5:00 p.m. filing deadline, but the Court nonetheless considers it.

[2] It is unclear whether Defendants intended their opposition to the temporary restraining order motion to also serve as an opposition to the preliminary injunction motion. As set forth at the end of this order, the parties shall meet and confer over that question and other issues.

## IV. DISCUSSION

### A. Temporary Restraining Order

All of the relevant factors governing preliminary injunctive relief weigh in MILO's favor. First, MILO has made a strong showing of likelihood of success on the merits by presenting evidence that James misappropriated MILO's proprietary information and breached the proprietary information agreement he signed with the company. *See Henry Schein, Inc. v. Cook*, 191 F. Supp. 3d 1072, 1077 (N.D. Cal. 2016) (finding likelihood of success on the merits where "Plaintiff has alleged that Defendant e-mailed and downloaded, to her personal devices, confidential information from [Plaintiff] before leaving her employment to work at a competitor" and "provided copies of a Confidential and Non-Solicitation Agreement and a Letter Agreement with provisions for confidentiality and non-solicitation, both of which appear to be signed by [Defendant]"). Defendants argue that MILO "has no copyrighted, proprietary information registered in either the state of California or the United States of America" and cite cases on trademark law. ECF No. 29 at 12; *id.* at 4-6. But MILO's allegations do not depend on having registered trademarks or copyrights, and Defendants fail to mention – aside from the bond provision discussed below – the propriety information agreement James signed, let alone attempt to explain why James did not violate that agreement. Nor do Defendants argue that the material in question does not qualify as trade secrets under state and federal law. MILO has presented substantial evidence that James copied material from MILO that was subject to the proprietary information agreement. In opposition, James declared under penalty of perjury that he has "not copied, solicited, displayed, created any derivative works[,] modified, transferred or secreted any electronically-stored information from Milo." ECF No. 29 at 12. However, this statement is not credible in light of the documentary evidence produced by MILO. *See e.g.*, ECF Nos. 14-2 and 14-3, and accompanying exhibits (showing computer forensics results showing downloads of MILO materials by James and forwarding of MILO materials by James to third parties, including "1.1 terabytes of video, project and graphic files for all of MILO's programs that were used in the creation of classes, certain MILO features, and web-based content"). MILO has established a likelihood of success on the merits.

1  Second, MILO has demonstrated that it will suffer irreparable injury absent preliminary
2  relief. "Evidence of threatened loss of prospective customers or goodwill certainly supports a
3  finding of the possibility of irreparable harm." *Stuhlbarg*, 240 F.3d at 841. In addition,
4  "California courts have presumed irreparable harm when proprietary information is
5  misappropriated." *TMX Funding, Inc. v. Impero Techs., Inc.*, No. C 10-00202 JF (PVT), 2010 WL
6  1028254, at *8 (N.D. Cal. Mar. 18, 2010). Moreover, James agreed that any breach of the
7  proprietary information agreement "would cause irreparable injury to the Company for which
8  pecuniary compensation would not afford adequate relief and for which it would be extremely
9  difficult to ascertain the amount of compensation which would afford adequate relief to the
10 Company." ECF No. 15 at 27.

11 Third, the balance of hardships tips in MILO's favor. As another court in this district has
12 explained:

> The proprietary information at issue belongs to Plaintiff, not
> Defendant[s]. Thus, Plaintiff has a very strong interest in ensuring
> that the information is not disclosed. On the other side,
> Defendant[s] [have] little interest in disclosing or using the
> information because such disclosure or use is unauthorized.
> Consequently, the Court finds that granting Plaintiff's TRO will
> result in little meaningful hardship to Defendant[s] because the TRO
> would essentially only require [them] to abide by existing law
> regarding the unauthorized use of another's trade secrets.

18 *Comet Techs. United States of Am. Inc. v. Beuerman*, No. 18-cv-01441-LHK, 2018 WL 1990226,
19 at *5 (N.D. Cal. Mar. 15, 2018) (quotation marks and citation omitted).

20 Fourth, an injunction is in the public interest. "[T]he public interest is served when
21 defendant is asked to do no more than abide by trade laws and the obligations of contractual
22 agreements signed with her employer. Public interest is also served by enabling the protection of
23 trade secrets." *Henry Schein*, 191 F. Supp. 3d at 1078. Defendants cite California Business and
24 Professions Code section 16600, which provides that "every contract by which anyone is
25 restrained from engaging in a lawful profession, trade, or business of any kind is to that extent
26 void." ECF No. 29 at 7 (also arguing that "negative consequences . . . would flow from enjoining
27 a 30-year professional from working in his field of choice"). But MILO has not requested that
28 Defendants "be enjoined from soliciting any and all business" and instead seeks only to prohibit

"conduct that is already prohibited" under the proprietary information agreement. *Henry Schein*, 191 F. Supp. 3d at 1077. Defendants have therefore not persuaded the Court that section 16600 voids the agreement, or that injunctive relief would be against the public interest.

For all of the above reasons, the Court grants MILO's motion for a temporary restraining order.

### B. Security

A "court may issue a preliminary injunction or temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."[3] Fed. R. Civ. P. 65(c). The court has discretion "as to the amount of security required, *if any*." *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009) (quotation marks and citations omitted) (emphasis in original). The Court declines to require any security in this case given James's agreement that any breach of the proprietary information agreement would give rise to injunctive relief "without the necessity of posting bond or other security." ECF No. 15 at 27. Moreover, "there is no likelihood of harm because the TRO would simply enjoin Defendant[s] from doing something Defendant[s] never had a right to do in the first place." *Comet Techs.*, 2018 WL 1990226, at *6.

### C. Expedited Discovery

Finally, the Court also grants MILO's request for expedited discovery. The standard for evaluating such requests is "good cause," which "may be found where the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party. It should be noted that courts have recognized that good cause is frequently found in cases involving claims of infringement and unfair competition." *Semitool, Inc. v. Tokyo Electron Am., Inc.*, 208 F.R.D. 273, 276 (N.D. Cal. 2002).[4] MILO requests leave to issue a

---

[3] Defendants request that a bond be made "immediately accessible to Mr. James." ECF No. 29 at 7. This request reflects a misunderstanding of the purpose of security under Rule 65(c). As explained by the rule, security may be ordered so that funds are available "to pay the costs and damages sustained by any party *found to have been wrongfully enjoined or restrained*." Fed. R. Civ. P. 65(c). There has been no such finding here.

[4] Defendants cite *Semitool* for the proposition that a party seeking expedited discovery must satisfy a four-part test: "[1] irreparable injury; [2] some probability of success on the merits; [3]

6

subpoena to third-party Shaun Hillman, with whom James has, based on the evidence presented by MILO, shared information covered by James's proprietary information agreement with MILO. MILO also seeks leave to conduct early depositions, of no more than two hours each, of Hillman and James. James's declaration makes clear that he does not believe he is liable in this case because MILO has no proprietary information. Because that statement appears to be at odds with the proprietary information agreement signed by James, and because MILO has presented evidence that James copied over a terabyte of information from MILO before he left and shared at least some of it with others, there is good cause to grant expedited discovery. "Quickly determining what information Defendant removed from Plaintiff, and whether and how Plaintiff's information is being used by Plaintiff's competitors is essential in order to minimize any harm to Plaintiff's competitive position." *Comet Techs.*, 2018 WL 1990226, at *7. Defendants have made no showing that the limited discovery requested by MILO on an expedited basis would be prejudicial, and the Court finds that the discovery MILO seeks on an expedited basis "is limited enough in scope that any prejudice to Defendant[s] is outweighed by the need for expedited discovery." *Id.*

## CONCLUSION

MILO's motion for a temporary restraining order is granted. It is hereby ordered that:

1. Defendants Lybroan Dennis James and Stemulate Solutions, Inc. (collectively, "Defendants") are immediately enjoined and restrained from copying, using in any way (including, without limitation, to solicit), displaying, or disclosing any documents, data, files of any kind, or any other electronically stored information ("ESI") taken or procured from MILO by James (the "MILO Property"). The MILO Property includes, but is not limited to, the following:

   a. Any and all video files and other ESI that Gary Garcia sent to James by email on or about September 28, 2021, *see* ECF No. 15 at 64, including, but not limited to, the

---

some connection between expedited discovery and avoidance of irreparable injury; and [4] some evidence that injury will result without expedited discovery looms greater than the injury that the defendant will suffer if the expedited relief is granted." ECF No. 29 at 8. However, while the quoted excerpt appeared in *Semitool*, it was from a different case – *Notaro v. Koch*, 95 F.R.D. 403, 405 (S.D.N.Y. 1982) – and the *Semitool* court "reject[ed] the rigid *Notaro* standard" and "decline[d] to apply" it. *Semitool*, 208 F.R.D. at 275-76.

7

1    files Garcia characterized as "the intros for the MILO modules," *id.* at 67 (the "September Garcia
2    Files");
3              b.    Any and all video files and other ESI that Garcia sent to Hillman or James
4    on or about October 22, 2021, including, but not limited to, the files Garcia characterized as "the
5    project files, videos and files for the graphics" in his October 16, 2021 email to James, *id.* at
6    128-31 (the "October Garcia Files");
7              c.    Any and all documents, data, files of any kind, and other ESI associated
8    with MILO's Google Workspace, downloaded by James using the "Google Takeout" function (the
9    "Google Takeout Files"); and
10             d.    Any and all documents, data, files of any kind, and other ESI associated
11   with MILO's Kajabi-based website, including, but not limited to, MILO program enrollee contact
12   information (the "Kajabi Website Files").
13       2.    Defendants are enjoined and prohibited from creating any derivative works using
14   any of the MILO Property, and from copying, using in any way (including, without limitation, to
15   solicit), displaying, or disclosing any such derivative works.
16       3.    Defendants shall not copy, move, transfer, secrete, or modify in any way, any
17   portable drives or electronic storage devices containing any part of the MILO Property, including,
18   without limitation, any part of the September Garcia Files, the October Garcia Files, the Google
19   Takeout Files, or the Kajabi Website Files, or any derivative works created using any of the
20   foregoing.
21       4.    Defendants must preserve and not move, transfer, secrete, or modify any and all
22   communications, notes, and other documents and ESI relating to: Defendants' acquisition,
23   copying, use, or distribution of any MILO Property; the creation of derivative works based on
24   MILO Property; or the solicitation of any business using MILO Property, including, but not
25   limited to, the contact information contained in the Google Takeout Files and the Kajabi Website
26   Files.  This order is in addition to, and does not limit, the obligation to preserve evidence under
27   federal law.
28       5.    Pursuant to Federal Rule of Civil Procedure 26(d)(1), the Court authorizes the

following expedited discovery:

    a.    A subpoena requiring Shaun Hillman to produce all communications regarding MILO, MILO Property, or Stemulate Solutions (including, without limitation, communications with James), and to submit to a preliminary two-hour remote deposition regarding what MILO materials he received, what he did with them, and where such materials reside; and

    b.    A preliminary two-hour remote deposition of James regarding what MILO Property he copied prior to or concurrently with his resignation from MILO, what he did with such materials, and where such materials reside.

6.    MILO shall be permitted to complete its depositions of Hillman and James on these topics and all others at a later date, pursuant to the Federal Rules of Civil Procedure.

7.    Unless extended by further court order, this temporary restraining order shall expire on January 6, 2022, at 5:00 p.m. Pacific time. The parties shall meet and confer to discuss (1) whether Defendants intended their opposition to MILO's motion for a temporary restraining order to be construed also as an opposition to MILO's motion for preliminary injunction, which was due on December 20, 2021, but has not been filed;[5] (2) if so, whether this temporary restraining order should be converted into a preliminary injunction; and (3) if not, (a) appropriate new deadlines for Defendants to oppose MILO's motion for a preliminary injunction and for MILO to reply, and (b) whether this temporary restraining order should be extended until February 4, 2022, the day after the scheduled hearing on MILO's motion for preliminary injunction. The parties shall file a joint statement, accompanied by a stipulation and proposed order if possible, no later than January 4, 2022, at 5:00 p.m. Pacific time.

**IT IS SO ORDERED.**

Dated: December 23, 2021

                                        JON S. TIGAR
                                  United States District Judge

---

[5] December 20 is the opposition deadline listed on the docket. Under Civil Local Rule 7-3(a), the deadline was actually December 17, 2021.