UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

| | |
|---|---|
| MILOEDU, INC.,<br><br>Plaintiff,<br><br>v.<br><br>LYBROAN DENNIS JAMES, *et al.*,<br><br>Defendants. | Case No.  21-cv-09261-JST (RMI)<br><br>**ORDER RE: DISCOVERY DISPUTE AND SETTING BRIEFING SCHEDULE FOR PLAINTIFF'S ATTORNEYS' FEE REQUEST**<br><br>Re: Dkt. No. 80 |

Now pending before the court is a jointly-filed letter brief (dkt. 80) setting forth a discovery dispute that boils down to Plaintiff's request for an order compelling Defendant to produce certain discovery. The court has reviewed the Parties' submissions and, pursuant to Federal Rule of Civil Procedure 78(b), and Civil Local Rule 7-1(b), the court finds the matter suitable for disposition without oral argument. As set forth herein, Plaintiff's requests to compel the production of the discovery currently in dispute, and Plaintiff's request for the establishment of a briefing schedule on its request for attorneys' fees, are granted.

Plaintiff (hereafter, "MILO") is an educational technology company based in Los Angeles, California. Compl. (dkt. 1) at 2. Defendant James (hereafter, "James") was formerly a director, officer, and a founding shareholder at MILO until he allegedly abandoned MILO to operate a competitor company – Defendant Stemulate Solutions, Inc. (hereafter, "Stemulate") – while "taking a copy of virtually ***all*** of [MILO's] proprietary information and intellectual property with him." *Id*. (emphasis in original). As such, MILO has alleged that "armed with MILO's repository of business assets, James is poised to steal his former company's goodwill, its clients, and its profits using a new corporate vehicle . . . [Stemulate] [which] James set up while still a MILO

United States District Court
Northern District of California

1    officer and director." *Id*. In short, MILO has pleaded nine closely related causes of action intended

2    to "stop [James's] gambit, and to recover for the damage and disruption James has inflicted so

3    far." *Id*. Not long after the filing of the Complaint in this case, the presiding judge afforded

4    Plaintiff expedited discovery (*see* TRO, dkt. 31 at 6-7), as well as a detailed temporary restraining

5    order requiring Defendants, *inter alia*, to undertake certain specified evidentiary preservation

6    actions, ordering depositions of James and Shaun Hillman ("Hillman"), and authorizing the

7    issuance of a subpoena requiring Hillman to produce a variety of documents and information (*see*

8    *id*. at 7-9). Subsequently, the TRO was converted to a preliminary injunction (*see* Preliminary

9    Injunction, dkt. 42).

10          Later in the case, the Parties proposed, and the court approved and entered, a stipulated

11   protective order (dkt. 70). The Parties also proposed, and the court approved and entered a certain

12   protocol for the inspection (hereafter, "the Protocol") and analysis of "each of the computers,

13   servers, hard drives, cloud storage locations, and other electronic repositories that Defendants

14   identify pursuant to the Preliminary Injunction . . ." *See* Ltr. Br. of February 10, 2022, Exh. 3 (dkt.

15   50) at 13-14. Several days later, while noting that Defendants had failed to comply with the terms

16   of the preliminary injunction order, including the imaging requirements (that is, permitting a third

17   party e-discovery consultant, Setec Investigations, to forensically image an Apple MacBook

18   computer, a personal Gmail email account, and the associated personal Google Drive account that

19   James identified during his deposition on January 24, 2022), the court adopted the Inspection

20   Protocol as an order of the court (*see* Order of February 14, 2022, dkt. 53).

21          The Protocol provided for Setec's analysis of all information, user-generated and system-

22   generated, on each of the electronic repositories identified by Defendants pursuant to the terms of

23   the preliminary injunction. Ltr. Br. of February 10, 2022, Exh. 3 (dkt. 50) at 13. Setec would then

24   assemble those findings into a spreadsheet that would somewhat resemble a privilege log where

25   each line of the spreadsheet would correspond to an individual file or other piece of data, while

26   assigning a bates number to each line and leaving one field for Defendants to mark items that

27   should either be protected under the attorney-client privilege or as being unrelated to MILO *and*

28   protected by a legally recognized right of privacy. *Id*. The Protocol referred to this spreadsheet as

United States District Court
Northern District of California

"the Inventory," which would be produced to Plaintiff and Defendants simultaneously; however, the native copy of all underlying items listed in the inventory would first be produced only to Defendants such that they might mark their copy of the inventory with their assertions of either privilege or privacy as set forth above. *Id*. Thereafter, the Protocol provides that any entries for which Defendants do not assert the Protocol's privilege or privacy exceptions shall be promptly tendered to Plaintiff on the 16th day following Setec's production of the inventory to the Parties. *Id*. As for the materials designated privileged or private pursuant to the Protocol, Setec was not obligated under the Protocol to tender those materials to Plaintiff absent a stipulation of the Parties' or a court order to that effect. *Id*. Lastly, the Protocol provides that "[i]f Defendants' counsel identifies material that he contends should be withheld, he must explain the basis for withholding in enough detail to allow a determination as to whether the withheld item truly is or is not privileged or private and unrelated to MILO [and that] [f]ederal authority applicable to the sufficiency of a privilege log will apply." *Id*. at 13-14.

On August 2, 2022, the Parties filed a letter brief that leaves little room for doubt that Defendants have violated the letter and spirit of the Protocol in their zeal to obstruct Plaintiff's access to evidence. *See* Ltr. Br. (dkt. 80) at 1-5. Plaintiff reports (and Defendants do not dispute) that "Defendants' counsel marked thousands of items in the Inventory [as] 'private' and repeated the same boilerplate, nonspecific explanation as to each designation, violating both the terms and spirit of the Protocol." *Id*. at 1. The indiscriminate nature of defense counsel's designations under the Protocol is manifest in the fact that defense counsel even marked as "private and unrelated to MILO" an email from MILO's counsel to James that was sent prior to James retaining counsel. *Id*. at 1-2. Further, despite the clear language of the Protocol, and notwithstanding Plaintiff's agreement to limiting the temporal scope of the information to be produced under the Protocol (only seeking information and documents ranging from June 1, 2020, to the date of imaging in February of 2022), "Defendants counsel continued to assert that it was MILO's burden to show particular documents should be produced, notwithstanding federal law, the plain terms of the Protocol, and the fact that MILO's counsel did not have access to the underlying documents; only Defendant and their counsel did." *Id*. at 2. Also, Plaintiff complains that moments before the

United States District Court
Northern District of California

instant letter brief was to be completed and readied for filing, Defendants produced a new version of their inventory (at 1:45 pm on August 1, 2022), with new designations (causing Plaintiff to have to review the new designations quickly); however, Plaintiff noted that "thousands of boilerplate and nonspecific privacy designations remain." *Id*. Furthermore, Setec produced a report in connection with its analysis of the imaged repositories; the report was first produced to Defendants, and Defendants are refusing to tender a copy to Plaintiff or to allow Setec to do so, based on a curious assertion of "work product," because Setec reportedly addressed it to Defendants. *Id*. Because the product of the analysis contemplated by the Protocol would not fit neatly into an inventory – namely because the Protocol tasked Setec with, *inter alia*, assessing whether anything had been done to hinder the analysis of the imaged repositories – Plaintiff notes that "[t]he idea that Setec would create a report documenting all of its work is not remarkable; it is Defendants' counsel's notion that Setec should not have created one that is." *Id*. at 3.

In short, Plaintiff seeks the following relief: (1) that the court direct Defendants to dump a copy of their Inventory (along with their thousands of boilerplate non-specific objections) so that the court can sift through them, one-by-one, and presumably render thousands of rulings as to whether each of Defendants' hordes of privacy assertions comply with the Protocol (*id*. at 2); (2) that the court order Setec or Defendants to immediately tender a copy of Setec's report to Plaintiff; and, (3) to set a briefing schedule for Plaintiff's request for attorneys' fees such as to recompense Plaintiff for the wastage of time for having to move to compel this material in the first place (*id*. at 3).

Before proceeding to Defendants' arguments, the court will begin with the observation that they are all beyond meritless – the arguments cannot be characterized any way other than utterly frivolous. For that reason, as set forth below, unless they wish to find themselves on the receiving end of severe sanctions (quite apart from awarding Plaintiff attorneys' fees as the court fully intends to do), Defendants **and** their counsel should take great care to avoid wasting the court's time and resources in this manner going forward. First, Defendants repeatedly complain about the size and scope of the inventory – for example, Defendants complain that the email inventory contains 16,906 emails that range from 2012 to 2022, and that the file inventory contains 1,514

1   files and ranges from 2012 to 2022. *See id*. at 3-4. Strangely, Defendants simultaneously noted

2   Plaintiff's agreement to limit the temporal scope of information sought to the period between June

3   1, 2020 and the date(s) of imaging for the devices and repositories that took place in February

4   2022, while complaining at the same time that "Plaintiff should not be entitled to review personal

5   information and documents spanning 8 years." *Id*. at 4. Additionally, Defendants attempt to ignore

6   or bypass the plain language of the Protocol (which became an order of the court), language that

7   clearly places the burden on Defendants to provide detailed explanations for their resistance to

8   production under either of the two permissible categories for doing so. *See id*. at 4. In this regard,

9   Defendants disingenuously point to a provision in the Stipulated Protective Order stating that a

10  challenging party has the burden of explaining why a designation under that order is improper. *Id.*

11  However, it is inconceivable to the undersigned that Defendant's counsel does not know or can

12  not understand the difference between the terms and functions of the stipulated protective order

13  (which governs the use and dissemination of information subject to discovery in this case), and the

14  Protocol (which became an order of the court and defined what must be tendered in discovery,

15  while placing the burden on Defendants to "explain in enough detail to allow a determination as to

16  whether the withheld item truly is or is not privileged or private and unrelated to MILO."). *See*

17  Protocol (dkt. 50) at 13-14. Thus, at bottom, Defendant's opposition to Plaintiff's request to

18  compel discovery under the Protocol is premised on two faulty and illusory foundations: (1)

19  Defendants ignoring Plaintiff's drastic reduction of the temporal scope of documents and

20  information sought; and, (2) a hopelessly frivolous attempt at reversing the Protocol's burden of

21  explaining the bases for resisting discovery (imposed on Defendants) and attempting to

22  improperly saddle Plaintiff with the burden of justifying why it should receive documents or

23  information that are currently only in Defendant's possession while Plaintiff has been effectively

24  confounded and stonewalled by Defendants' boilerplate and nonspecific privilege and privacy

25  designations in derogation of the Protocol's requirement that Defendants' designations be

26  sufficiently specific and detailed such that Plaintiff could intelligently and fairly determine

27  whether or not the item truly is or is not privileged or private and unrelated to MILO. Lastly, as to

28  the Setec report of its analysis, Defendants' portion of the brief ventures beyond the outer

United States District Court
Northern District of California

United States District Court
Northern District of California

1    boundary of frivolous argument, to where it is squarely situated on grounds that can only be

2    described as nonsensical. Without anything remotely resembling a coherent explanation,

3    Defendants characterize Setec's analytical report as a "fraudulent Plaintiff-created document,"

4    based only on Defendants' incorrect statement that "Plaintiff instructed Setec to create this

5    document and this document is not identified or called for in the Court-adopted Inspection

6    Protocol." *See* Ltr. Br. (dkt. 80) at 5. Apparently, Defendants' have taken to vacillation between

7    using the Protocol as a shield (*e.g.*, their refusal to produce Setec's report), and outright ignoring

8    the Protocol at other times as suits their purpose (*e.g.*, relying on an irrelevant provision of the

9    stipulated protective order to escape their obligations under the Protocol). The Protocol

10   empowered Setec to "also assess whether any software has been downloaded or implemented to

11   hinder or frustrate the forensic analysis or recovery or any materials from the Electronic Sources."

12   *See* Protocol (dkt. 50) at 13. This assessment calls for a report, or some other narrative description

13   outside the inventory framework. Because Defendants' objections to the production of Setec's

14   report are little more than blusterous noise, those objections are **OVERRULED**.

15         Defendants' tactics have operated to unfairly obstruct Plaintiff's access to evidence; to

16   unjustifiably delay the progression of this case; and, to unmercifully lay waste to an appreciable

17   amount of the court's time and resources. However, courts are not powerless in the face of such

18   tactics. For starters, the undersigned will not countenance Defendants' gross misconduct by

19   agreeing to review their boilerplate, rote, or nonspecific designations for thousands of emails and

20   documents when the Protocol clearly required Defendants to provide sufficiently detailed

21   explanations to allow Plaintiff to intelligently determine whether the withheld items truly were or

22   were not privileged or private and unrelated to MILO. In other words, the Protocol gave

23   Defendants every opportunity to litigate these issues ***in good faith*** (that is, in compliance with the

24   plaint and clear terms of the Protocol), and if unable to do so, to bring the matters before the court

25   ***in good faith***, however, Defendants have chosen to take a very different path, and the time has

26   now come for them to pay for that decision.

27         First, Setec Investigations is herewith **ORDERED** to immediately disclose its analytical

28   report to Plaintiff. Second, for the reasons stated herein, as well as based on Plaintiff's arguments

United States District Court
Northern District of California

1   (*see* dkt. 80 at 1-3), as for each entry in the most current Inventory[1] and all information underlying

2   such entries in that Inventory – ranging from June 1, 2020, to the date(s) of imaging for the

3   devices and repositories that took place in February 2022 – for which Defendants provided non-

4   specific or boilerplate designations, Defendants are **ORDERED** to **immediately** tender the

5   **entirety** of that material to Plaintiff without any further objections or delays. To the extent that the

6   Parties find themselves in dispute about the nature of one or more of Defendants' designations

7   (*i.e.*, whether the designation has in fact been articulated "in enough detail to allow a

8   determination as to whether the withheld item truly is or is not privileged or private and unrelated

9   to MILO" as described in the Protocol), the Parties should feel free to present such dispute(s) to

10   the undersigned in a single forthcoming discovery dispute letter brief. However, as mentioned, let

11   Defendants and their counsel be clearly and unmistakably warned that playing games with the

12   court is a dangerous endeavor, and those that are brave enough, or misguided enough, to assay

13   such adventures must be ready and willing to live with the consequences. So, if such a dispute

14   about the nature and quality of one or more of Defendants' objections to production under the

15   Protocol (as set forth in the operative Inventory) is to be brought before the court, and if the court

16   determines again that Defendants or their counsel have made even one argument, or taken even

17   one position, that the court determines to constitute willful obstructionism or bad faith or relying

18   on arguments that are frivolous, the court will not hesitate to visit harsh sanctions upon defense

19   counsel and upon Defendants, including hefty fines for the discovery misconduct targeting defense

20   counsel directly, and/or the *sua sponte* issuance of an order to show cause, followed by a contempt

21   hearing, and culminating in the issuance of a report and recommendation urging the presiding

22   judge to find Defendants and/or defense counsel in contempt of court.

23        It is **FURTHER ORDERED** that, having found that all of Defendants' arguments in

24

25   _____

26   [1] The court intends for Defendants to be bound by the designations set forth in the version of their Inventory that was transmitted or sent to Plaintiff at around 1:45 pm on August 1, 2022 (the date the instant letter brief was being prepared for filing) (hereafter, the "operative Inventory"). In other words, Defendants

27   are not permitted to reformulate *__any__* of their previously asserted explanations that served as their stated bases for withholding information under that version of their Inventory. If the explanation was boilerplate and nonspecific, Defendants *__must__* tender those underlying materials without any further objections

28   *__immediately__*.

opposition to Plaintiff's request to compel the material in question are utterly frivolous, such as to constitute an abject waste of court's time as well as Plaintiff's time and resources, the court finds that Defendants and/or their counsel shall be liable for Plaintiff's attorneys' fees in connection with Plaintiffs' efforts to ferret through Defendants' boilerplate objections and the preparation and filing of the letter brief (dkt. 80) that brought this matter to the court's attention. All that remains in this regard, are determinations as to the reasonableness of Plaintiff's attorneys' hourly rates and the reasonableness of the number of hours expended, as well as the suitable target for the attorneys' fee award – to wit, Defendants or their counsel. Accordingly, if Plaintiff continues to desire compensation from Defendants and/or their counsel, Plaintiff is **ORDERED** to file its opening brief in support of an attorneys' fee award by 12:00 noon on Monday, August 15, 2022. Plaintiff is directed to provide – via declaration(s) and billing details – enough information for the court and Defendants to be able to render determinations as to the reasonableness of counsel's hourly rates and the reasonableness of the number of hours expended. Defendants are **ORDERED** to file a responsive brief no later than 12:00 noon on Monday, August 22, 2022. If Plaintiff wishes to file a reply brief, it must do so no later than 12:00 noon on Monday, August 29, 2022. To the extent they wish, the Parties are also encouraged to direct some of their arguments as to the suitable target for the forthcoming attorney fee award – that is, whether it should be Defendants, their counsel, or both. Lastly, this briefing schedule is fixed and, absent the most extraordinary circumstances, the court will not entertain requests for extra time.

**IT IS SO ORDERED.**

Dated: August 8, 2022

ROBERT M. ILLMAN
United States Magistrate Judge